## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) CHARLESETTA REDD, individually and as
next of kin of BRIAN SIMMS, JR., deceased,

                                 Plaintiff,

vs.

(1) BIG DOG HOLDING COMPANY, L.L.C. d/b/a;
OKLAHOMA CITY PUBLIC FARMERS MARKET;
(2) 365 LIVE ENTERTAINMENT, L.L.C. d/b/a
365 LIVE ENTERTAINMENT;
(3) CITY OF OKLAHOMA CITY, a municipality, ex rel.
CITY OF OKC POLICE DEPARTMENT; and
(4) PAUL GAYLON, individually,

                            Defendants.

Case No. CIV-15-263-C

## COMPLAINT

COMES NOW, the Plaintiff, Charlesetta Redd, Individually and as Next of Kin of

Brian Simms, Jr., deceased (hereinafter "Plaintiff"), and for her causes of action against

the Defendants, Big Dog Holding Company, L.L.C. d/b/a Oklahoma City Public Farmers

Market; 365 Live Entertainment, L.L.C. d/b/a 365 Live Entertainment; City of Oklahoma

City, a municipality, ex rel. the City of Oklahoma City Police Department and Paul Gaylon,

individually, and in his official capacity, and alleges and states as follows:

## PARTIES

1.    Plaintiff, Charlesetta Redd, is the surviving mother and next of kin of the

decedent, Brian Simms, Jr.  Plaintiff is now and has been, at all material times, a resident

of the State of Kansas.

2.      At the time of the events complained of herein, specifically on July 11, 2013, Brian Simms, Jr. was a resident of Olathe, Kansas.  Brian Simms Jr. ("Decedent") was twenty-four (24) years old at the time of his death.

3.      Pursuant to 12 O.S. § 1054, Plaintiff is authorized to bring this action as next of kin in that no personal representative has been appointed and there are no adult children of the decedent.

4.      Defendant, Big Dog Holding Company, L.L.C., is a for-profit, domestic limited liability company doing business in the State of Oklahoma as Oklahoma City Farmers Market ("Farmers Market").  At all times pertinent hereto, the Defendant, Big Dog Holding Company, L.L.C., owned, operated, substantially controlled and/or directed the operation and/or management of the venue known as Oklahoma City Farmers Market at 311 S. Klein, Oklahoma City, Oklahoma.

5.      Defendant, 365 Live Entertainment, L.L.C. d/b/a 365 Live Entertainment ("365 Live"), is a for-profit, limited liability company, headquartered in Houston, Texas, which does business in numerous states throughout the country, including the State of Oklahoma, promoting entertainment events, including the event at which decedent was killed in this case.  Defendant 365 Live can be served at its corporate headquarters by and through its management, Armani Flood and/or James McGhee at 10840 Westheimer Road, Houston, Texas, 77042.

6.      The Defendant, the City of Oklahoma City ("City"), is a municipality located in Oklahoma County, Oklahoma.  At all times relevant to this action, Defendant City acted through its managers and policy makers, including the Chief of Police and other employees

2

and agents of the City of Oklahoma City Police Department ("OKCPD"); and the acts, edicts and practices of said persons represent the official policies of the Defendant City.

7.     The OKCPD is a law enforcement agency that exists and functions under the direction of the Defendant City.  The Defendant City, on behalf of the OKCPD, is a properly named political subdivision and municipality pursuant to 51 O.S. § 156(D).

8.     Defendant Paul Gaylon (hereafter "Gaylon"), was at all relevant times an officer with the Oklahoma City Police Department.   Upon information and belief, Defendant Gaylon is an adult citizen and resident of Oklahoma County, State of Oklahoma. To the extent his actions are unlawful and he liable to the Plaintiff in his official capacity, Defendant City of Oklahoma City is liable to the Plaintiff for any damages caused thereby. Defendant Gaylon is further sued in his individual capacity for the allegations stated infra.

9.     To Plaintiff's best information and belief, at all times complained of herein, the Defendant, Paul Gaylon, was acting as an agent and/or employee of the Defendants, Farmers Market and/or 365 Live, while providing private security services to the Oklahoma City Farmers Market, while off-duty as an OKCPD police officer.

## JURISDICTION

10.     The incidents giving rise to the cause of action occurred in Oklahoma City, Oklahoma County, State of Oklahoma, at 311 S. Klein on or about July 11, 2013.

11.     On or about July 1, 2014, Plaintiff properly submitted notice of her tort claim pursuant to 51 O.S. § 151 *et seq.* to the City through the Office of its City Manager, and, accordingly, has complied with all pre-filing requirements set for therein.  Defendants received such tort claim notice on July 3, 2014.  Because such claim was not approved or

3

denied within ninety (90) days [October 1, 2014], such claim is deemed denied pursuant to

51 O.S. § 157(A). This litigation is properly brought within one-hundred eighty (180) days

of the deemed denial, pursuant to 51 O.S. § 157(B).

12.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332, as

there is diversity of citizenship between the parties and the amount in controversy exceeds

$75,000.00, exclusive of interest and costs.

13.     In addition, the original jurisdiction of this Court is invoked pursuant to

28 U.S.C. § 1331 as Plaintiff's causes against the Defendant include deprivations of the

decedent's rights under the United States Constitution, which are enforced in civil actions

by, inter alia, 42 U.S.C. § 1983.

14.     Additionally, this Court has supplemental jurisdiction of the state and

common law claims asserted herein pursuant to 28 U.S.C. § 1367 because such claims form

part of the same case or controversy over which this Court has original jurisdiction.

## VENUE

15.     The acts and omissions complained of herein occurred in Oklahoma County,

Oklahoma, which is also the residence of some of the parties to this suit. Accordingly,

venue lies within this Judicial District pursuant to 28 U.S.C. §§ 116(a) and 1391.

## COMMON FACTUAL ALLEGATIONS

16.     On or about July 11, 2013, the Defendants Farmers Market held a rap concert

at the concert venue on Famer Market's facilities in Oklahoma City. The artist performing

was Chief Keef, a rapper from Chicago, Illinois, and his group: The Glory Boys. The

concert was promoted by 365 Live Entertainment, a promoter from Houston, Texas.

17.    Prior this concert, Defendants Farmers Market and/or 365 Live sought out and obtained a permit from the City of Oklahoma City to hold to this all–ages rap concert at their venue, Oklahoma City Farmer's Market.

18.    To Plaintiff's best information and belief, the Defendants Farmers Market commonly and frequently contracted with, hired, employed and/or associated with the City of Oklahoma City, by and through the OKCPD, to hire off-duty police officers to work private security at events held at their concert venue and on their facilities.

19.    To Plaintiff's best information and belief, prior to the July 11, 2013, rap concert at issue in this case (the "Concert"), Defendant Farmers Market contracted with, hired, retained, employed and/or associated with the City, by and through OKCPD, to hire off-duty police officers to work private security for the event.

20.    To Plaintiff's best information and belief, at all times complained of herein, Defendants Gaylon was a police officer employed by and working for the Defendant City's Police Department.

21.    The OKCPD is a law enforcement agency operating under the authority and supervision of the Defendant City of Oklahoma City.

22.    To Plaintiff's best information and belief, Defendants Gaylon and/or the City, by and through the OKCPD or some other subdivision, were contracted with, hired, retained and/or employed by the Defendant Farmers Market to provide private security services at the Chief Keef rap concert to be held on its premises on July 11, 2013.

23.    On the night of July 11, 2013, the Defendant Gaylon, as a fully uniformed police officer and carrying the firearm issued to him as a result of and in concert with his

employment with the OKCPD, was working private security and/or providing security services for the Defendant Farmers Market at the Chief Keef concert held there.

24.     On or about July 11, 2013, the decedent, Brian Simms, Jr. was visiting Oklahoma City to spend time with friends and attended the Chief Keef concert at the Defendant Farmers Market's premises.

25.     Upon information and belief, on the night of July 11, 2013, the decedent was located on the premises of the Defendant Farmers Market during the Chief Keef concert, sitting in a parked car located in the parking lot.

26.     Upon information and belief, the vehicle the decedent was sitting in was approached by the Defendant Gaylon and another OKCPD officer working private security that night, Antonio Escobar ("Escobar").

27.     Upon information and belief, the decedent was observed by Defendant Gaylon and/or Escobar to be sitting "asleep" in a parked car in the parking lot of the concert venue, with the "windows down." Defendant Gaylon and/or Escobar have alleged that the decedent had a gun on his lap or in his waistband.

28.     Upon information and belief, Defendant Gaylon initiated contact with the decedent, who was sitting in the passenger side seat of a parked vehicle.

29.     Upon information and belief, shortly after initiating contact with the decedent, Defendant Gaylon opened fire and shot Mr. Simms at least twelve (12) times.

30.     According to the Autopsy Report, the decedent suffered twelve (12) entrance and/or perforating gunshot wounds to his body, causing his death. The gunshot wounds included:

(a) an entrance wound to his right upper arm, which partially exited his right arm and then entered and penetrated the apex on his right lung into the right upper chest;

(b) an entrance wound to his right arm, perforating his arm and then re-entering through his 2nd and 3rd ribs and perforated the right upper lobe of his right lung;

(c) a perforating wound to his right forearm, entering and exiting his arm;

(d) a perforating wound to his right arm which fractured and then exited his arm;

(e) an entrance wound to his right upper back which penetrated his muscle, epiglottis, hyoid bone and neck muscle and into his lower jawbone;

(f) an entrance wound to his right middle back which penetrated through his esophagus, the upper segment of his trachea and into his left neck muscle with massive hematoma;

(g) an entrance wound to his right lower back which penetrated his 8th rib, the right lower lobe of the hilum, superior vena cava, pulmonary trunk and ascending aorta into the left 2nd rib on his left chest wall (this was the fatal wound);

(h) an entrance wound to his right lower back which penetrated through the retroperitoneum, mesentery and jejunum into the left peritoneal wall;

(i) a perforating wound to his left forearm which fractured and then exited his arm;

(j) a perforating wound to his right index finger which fractured and then exited;

(k) an entrance wound to his right lateral chest which penetrated through the 4th and 5th ribs and then perforated the middle lobe of his right lung; and

(l) an entrance wound to his right chest which penetrated through the 8th rib and diaphragm and into his liver.

31.     Sadly, at only 24 years of age, Mr. Simms was pronounced dead at the scene of the shooting on July 11, 2013. The Oklahoma Medical Chief Medical Examiner found Mr. Simms' cause of death to be "Multiple Gunshot Wounds" and the manner of death to be "Homicide."

32.     It is undisputed that the Defendant Gaylon caused the death of the decedent by firing 12 rounds from his OKCPD department-issued firearm, while in uniform, but off-duty, and acting as private security for the Defendants Farmers Market and/or 365 Live.

33.     Commonly, frequently and at all times relevant hereto, the Defendant Farmers Market hired and paid the Defendant Gaylon and other OKCPD officers, to perform security on the Oklahoma Farmers Market premises and thereby became a participant in joint action with the Defendant City.

34.     At all times complained of herein, to Plaintiff's best information and belief at this time, the Defendant Gaylon and Escobar were fully attired as OKCPD police officers and maintained their utility belt and weapons which were issued by the Defendant City, by and through the OKCPD.

35.     The 12 bullets fired by Defendant Gaylon at the decedent at close range, which caused decedent severe personal injuries and death, were discharged from a firearm belonging to and issued to Defendant Gaylon by the Defendant City, through the OKCPD.

36.     At all times complained of herein, it is alleged that the Defendant Gaylon of the OKCPD, as an agent, servant and/or employee of the Defendant City, while performing duties as private security was also acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the Defendant City, and

under the laws of the State of Oklahoma, when initiating contact with and firing 12 rounds from his department-issued firearm at the decedent, killing him.

37.     At all times relevant hereto, the Defendant City had the duty to competently and sufficiently train the Defendant Gaylon to conform his conduct to a standard for the protection of individuals, such as the decedent, against the unreasonable risk of harm by conducting himself in such a manner so as to not intentionally, wantonly and/or negligently inflict injuries and/or death to citizens, such as the decedent herein.

38.     In addition, at all times relevant hereto, the Defendant City had the duty to competently and sufficiently train the Defendant Gaylon in the protections of the rights of citizens under the Oklahoma Constitution, the United States Constitution and the Bill of Rights.

39.     Defendant Gaylon, as a police officer with Defendant City, although off-duty at the time, was acting under the color of state law when he shot the decedent 12 times causing injuries that resulted in his death.

40.     Defendant Gaylon violated the City's policies regarding the use of deadly force when he shot the decedent 12 times at close range, as no reasonable officer would have deemed Bryan Simms, Jr., while sitting in a parked vehicle, a threat to anyone or that Mr. Simms posed any risk of harm to either Defendant Gaylon or Escobar at the time of the shooting so that the firing of 12 shots could be considered reasonable force.

41.     At all relevant times hereto, Defendant Gaylon was employed by the Defendant City as duly authorized police officer and charged with all of the duties and responsibilities attendant to such position.

42.     The acts and conduct of Defendant Gaylon while causing the death of the decedent, Bryan Simms, Jr. was done in furtherance of and were fairly and naturally incident to the business of the Oklahoma City Police Department and the Defendant City.

43.     The City is liable for the acts and conduct of their agents and employees while acting in the scope of their employment.  Because the actions taken by Defendant Gaylon was within the scope of his employment as a police officer, the City is therefore liable to Plaintiff for the actions which resulted in the death of her son, Bryan Simms, Jr.

44.     Upon information and belief, prior to the incidents that resulted in the death of Bryan Simms, Jr., Defendant Gaylon was involved in several instances in which his conduct violated the customs, directives, rules, regulations and policies of the Oklahoma City Police Department.  As such, Defendant City was on notice that Defendant Gaylon's behavior and conduct was suspect and posed a real an imminent threat to the rights of individuals, such as the decedent, Bryan Simms, Jr.

45.     Upon information and belief, prior to the incidents that resulted in the death of Bryan Simms, Jr., Defendant Farmer's Market had retained Defendant Gaylon to perform security services in the same manner and circumstance as those which resulted in Mr. Simms' death.  Defendant Farmer's Market was also aware that Defendant Gaylon's past behavior and conduct posed a real and imminent danger to the rights of individuals such as Bryan Simms, Jr.

46.     At all times complained of herein, the Defendant Gaylon was acting as an agent, actual and/or ostensible, of the Defendant Farmers Market in that he was hired and/or employed to provide security services for Farmers Market and was furthering the

10

goals of Farmers Market.  Therefore, the Defendant Farmers Market is responsible and/or vicariously liable for the acts and/or omissions of Defendant Gaylon alleged herein under the theory of *respondeat superior.*

47.     Defendant Gaylon violated the Defendant Farmers Market's policies regarding the use of deadly force by security when he shot the decedent 12 times at close range, as no reasonable security guard would have deemed Bryan Simms, Jr., while sitting in a parked vehicle, a threat to anyone or that Mr. Simms posed any risk of harm to either Defendant Gaylon or Escobar at the time of the shooting so that the firing of 12 shots could be considered reasonable action.

48.     Defendant Gaylon failed to act as a reasonable security guard would and should have acted under the same or similar circumstances when he approached the decedent in a parked car, initiated contact with him and then proceeded to fire 12 gun shots into his body from close range, resulting in his death.

49.     As a result of the previous acts and conduct of Defendant Gaylon, Defendants the City and Farmer's Market, through their control and supervision, knew or should have known of Defendant Gaylon's propensity to cause harm to the public and to violate the rights of individuals such as Bryan Simms, Jr., in violation of their constitutional rights, 42 U.S.C. § 1983 and Article 2, § 9 of the Oklahoma Constitution.

50.     Defendants Famer's Market, 365 Live and the City owed a duty to the decedent to protect him and others from excessive force, injury and damages.

51.     Defendant Gaylon's acts and omissions in causing the death of Brian Simms, Jr., were reckless, willful and wanton, and such acts and omissions proximately led to the wrongful death of Brian Simms, Jr.

52.     The acts and conduct of Defendant Gaylon in causing the wrongful death of Brian Simms, Jr., was done in the furtherance of the business interests of the Defendants Farmers Market and 365 Live.

53.     Defendants 365 Live and Farmer's Market were engaged in a joint venture with respect to the concert event at which the decedent was shot and killed.  Thus, Defendants held a joint interest in the event, maintained an express or implied agreement to share in the proceeds and/or profits and/or losses of such venture and cooperated in organizing, promoting and holding the event.

54.     Because Defendants 365 Live and Farmer's Market were engaged in a joint venture with respect to the event at which the decedent was shot and killed, they each remain liable for the acts and omissions of the Defendant Gaylon because they acted in concert in the organizing, promoting and holding of the event at issue.  These entities had an equal right to control the venue as a whole, as well as to participate in the control, operation and management of the subject premises where the event was held.

55.     The severe personal injuries of Brian Simms, Jr., are attributable wholly to the conduct of all the Defendants herein, taken collectively and/or individually.  Thus, the Defendants are each of them, jointly and/or severally liable for the injuries and/or damages sustained by the Plaintiff.

### Count I: Negligence/Gross Negligence

Plaintiff incorporates herein each allegation listed above and further states that:

56.    Defendant Gaylon was negligent in that he failed in his duty to protect the decedent from excessive force under the color law, unlawful assault, and wrongful death. Defendant Gaylon was further negligent in his disregard for any policies in place with Defendant City designed to prevent the use of excessive force under color of law.

57.    At all times relevant hereto, specifically, on or about July 11, 2013, Defendant Gaylon, having been employed by the Defendants Farmers Market and/or 365 Live to provide private security services on the premises, had a duty to carry himself and act as reasonable security guard would act under the same or similar circumstances.

58.    Defendant City was negligent in that they failed in their duty to protect the decedent from excessive force under the color of law, unlawful assault, and wrongful death.

59.    Defendants City and Oklahoma Farmers Market were also negligent in failing to properly train and supervise their employees, including Defendants Gaylon, such as to avoid the use of excessive force and to prevent the unlawful harassment, detention, assault or other harm to individuals such as the decedent.

60.    Defendants Farmer's Market and/or 365 Live were negligent in that they failed to provide a safe environment for the decedent, an invitee on the premises, and failed to protect the decedent from excessive force, unlawful assault and wrongful death.

61.    Defendant Farmer's Market was negligent in failing to train and supervise employees or contractors, including Defendant Gaylon, such as to prevent harm to invitees such as the decedent.

62.     Despite the knowledge of the imminent risk Defendant Gaylon posed to the rights of others, Defendants City and Farmer's Market were negligent in the retention and failure to supervise Defendant Gaylon to protect individuals like Bryan Simms, Jr. from excessive force, injury and damages.

63.     The actions and omissions of these Defendants, as described above, were the direct and proximate cause of the death of Bryan Simms, Jr. and as such Defendants are liable to the Plaintiff for the damages described herein.

64.     That as a result of Defendants' acts and omissions causing the wrongful death of Bryan Simms, Jr., Plaintiff has suffered damages, including funeral expenses, loss of companionship of her son, grief, pain and suffering, emotional distress and other dignitary harms. Moreover, under Oklahoma law, Plaintiff is entitled to recover all damages allowed by law under the Oklahoma Wrongful Death Act, 12 O.S. §1053, including the physical and mental pain and suffering of the decedent prior to this death.

## Count II: Gross Negligence

Plaintiff incorporates herein each allegation listed above and further states that:

65.     On or about July 11, 2013, Defendant Gaylon was grossly negligent in the performance of his duties as a private security guard on behalf of the Defendants Farmers Market and/or 365 Live in failing to act as a reasonable security guard would and should act under the same or similar circumstances.

66.     Defendant Gaylon's actions in shooting the decedent 12 times at close range and killing him were unnecessarily excessive, willful and wanton and in reckless disregard for the rights of Mr. Simms, Jr. to be secure in his person.

67.    The actions and omissions of these Defendants, described herein, were grossly negligent and done with reckless disregard for the rights and safety of the public, as such Defendants are liable for punitive damages to Plaintiff.

68.    Defendant Farmer's Market was grossly negligent in failing to properly train and/or supervise security personnel, such as Defendant Gaylon, such as to prevent deadly harm to invitees on their premises.

69.    The actions and omissions of these Defendants, described herein, were grossly negligent and done with reckless disregard for the rights and safety of the public and were the direct and proximate cause of the death of Bryan Simms, Jr.  As such, Defendants are liable to the Plaintiff for punitive damages.

## Count III: Use of Excessive Force under 42 O.S. §1983

Plaintiff incorporates herein each allegation listed above and further states that:

70.    At certain times pertinent hereto, Defendant Gaylon was acting under the color of state law such that he had a duty to not use excessive force in the engagement, confrontation, seizure or other dealings with members of the public, including the decedent, Brian Simms, Jr.

71.    The force used by Defendant Gaylon, to wit: shooting the decedent twelve times at close range, was unreasonable and excessive under the circumstances. The actions resulting in the death of Bryan Simms, Jr. were excessive in nature when considered in consort with the fact that Mr. Simms, Jr. was sleeping in a parked car at the time Defendant Gaylon unlawfully approached him, without probable cause and without provocation, and thereafter shot and killed him.

72.     Under the circumstances, because it was unreasonable to shoot and kill Brian Simms, Jr. 12 times at close range, Defendant Gaylon used more force than was necessary, and completely failed to attempt to use less dangerous means.

73.     Defendant Gaylon's disregard for well-established constitutional rights of Bryan Simms, Jr. to be secure in his person, as mandated by U.S. Constitution in Section 1983 and the Oklahoma Constitution, Article 2, § 30, proximately caused and/or contributed to the death of Bryan Simms, Jr..

74.     The excessive acts and/or omissions of Defendants, as described above, were the direct and proximate cause of the death of Bryan Simms, Jr. and as such Defendants are liable to the Plaintiff for the damages described herein, including, but not limited to, the value of decedent's life and punitive damages pursuant to Section 1983.

## Count IV: Governmental Tort Liability

Plaintiff incorporates herein each allegation listed above and further states that:

75.     At all times pertinent hereto Defendant Gaylon was employed by the Defendant City and, at certain times, was acting on behalf of Defendant City and/or under color of state law.

76.     As such, the Defendant City is liable to the Plaintiff and to the decedent for that acts of its employees, to wit: Defendant Gaylon.

77.     The Constitution of the State of Oklahoma at Article 2, § 30, protects citizens from excessive force, assault and battery and from wrongful death committed by the employees of the state and local entities, and that protection includes legal liability for such unlawful conduct.

78.     The acts and omissions of Defendant Gaylon, in furtherance of and in the course of their employment with the Defendant City, were intended to put the decedent, Bryan Simms, Jr., in apprehension and fear and terror for his personal safety.  Such conduct was done without the decedent's consent and resulted in harm to Bryan Simms, Jr.

79.     The actions of Defendant Gaylon as described herein was negligent and tortious such that they were the direct and proximate cause of the death of the decedent.

80.     As a result of the actions and omissions of Defendants, in causing the wrongful death of Bryan Simms, Jr., Plaintiff has suffered significant damages.

## **Prayer for Relief**

WHEREFORE, premises considered, the Plaintiff, Charlesetta Redd, Individually and as Parent and Next Friend of Brian Simms, Jr., deceased, for her negligence claims and those other claims set forth above, pray for judgment for damages against each Defendant in an amount in excess of amount required for diversity jurisdiction pursuant to Section 1332 of Title 28, U.S. Code, plus costs and interest, or that amount allowed by law, whichever amount is greater, for each act and occurrence, in the form of and/or as a result of the claim asserted, together with attorney fees, costs, interest and other damages as the Court deems appropriate, including punitive damages.

Respectfully submitted,



Glendell D. Nix, OBA # 13747
Jacob Diesselhorst, OBA # 19446
Nicole Snapp-Holloway, OBA #18472
**MAPLES NIX & DIESSELHORST, PLLC**
2908 Via Esperanza
Edmond, Oklahoma 73013
T: (405) 509-2000
F: (405) 513-8121
E: jacob@mndlawfirm.com
E: nicole@mndlawfirm.com

-and-

Kenyatta Bethea, OBA #18650
**HOLLOWAY, BETHEA & OSENBAUGH, PLLC**
3035 N.W. 63rd, Suite 102N
Oklahoma City, Oklahoma  73116
T: (405) 246-0600
F: (405) 810-4080
E: kbethea@hbolaw.com

**ATTORNEYS FOR THE PLAINTIFF**