IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CHARLESETTA REDD, individually and )
as Personal Representative of the ESTATE )
of BRIAN SIMMS, JR., deceased, )
                                                    Plaintiff, )
                                                     )
vs. ) Case No. CIV-15-263-C
                                                   )
BIG DOG HOLDING COMPANY, L.L.C. )
d/b/a OKLAHOMA CITY PUBLIC )
FARMERS MARKET et al., )
                                                 )
                                       Defendants. )

## MEMORANDUM OPINION AND ORDER

On July 11, 2013, the fatal shooting of Brian Simms, Jr., gave rise to the claims of the instant case. Simms was staying with a girlfriend and visiting his friend, Vuntral Brown, in Oklahoma City. Brown had a ticket to a Chief Keef concert that was held on the premises of Defendant Oklahoma City Public Farmers Market ("Farmers Market"). The Farmers Market hired Defendant Event Security, L.L.C. Defendant Event Security hired Defendant Paul Galyon, an off-duty police officer for Defendant Oklahoma City Police Department ("OKCPD").

During a conversation in the Farmers Market parking lot, Brown informed Simms that there was a loaded weapon under the back seat of the car. While Brown attended the concert, Simms sat in the car in the Farmers Market parking lot. At some point, Simms moved the car and backed it into a different parking spot in the Farmers Market parking

lot. During the concert, Officers Paul Galyon and Antonio Escobar, both off-duty OKCPD officers, patrolled the premises of the Farmers Market.

Officer Galyon alleges that he saw an individual around or near the driver's side of Brown's car and started to approach the vehicle. Officers Galyon and Escobar noted Brown's car was parked straddling the parking lot lines. On their approach, Officers Galyon and Escobar saw a man, Simms, sitting in the driver's seat with his eyes closed. Officer Galyon called out to Simms. Officers Galyon and Escobar allege that Simms had a gun in his lap or waistband. Shortly after the initial encounter, Officer Galyon shot Simms multiple times resulting in Simms' death. Plaintiff filed suit on March 13, 2015.

Defendant Galyon, Defendant City of Oklahoma City ("OKC"), and Defendant Bill Citty ("Citty") have filed separate Motions for Summary Judgment. Plaintiff has filed a Motion for Partial Summary Judgment. All four Motions are now at issue.

## I. Standard

A key policy goal and primary principle of Fed. R. Civ. P. 56 is "to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Fed. R. Civ. P. 56 sets the standard for summary judgment:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." Buell Cabinet Co., Inc. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979). Summary judgment is appropriate "after adequate

time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). It is also well established that the "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, (quoting Fed. R. Civ. P. 56) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.) "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (footnote omitted). "In its review, the Court construes the record in the light most favorable to the party opposing summary judgment." Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

II. Analysis

A. Defendant Paul Galyon's Motion for Summary Judgment

1. Gross Negligence

Defendant Galyon argues that Plaintiff substantively alleges an assault and battery claim, instead of a gross negligence claim, and the statute of limitations has run on the assault and battery claim. Plaintiff argues that she is not alleging any type of assault and battery claim; Plaintiff subsequently argues that an assault and battery claim requires the element of intent and Plaintiff has not alleged Defendant acted with intent. In this instance, "[w]hat controls is not the pleader's designation of the nature of the cause of action; rather, it is the substance of the pleading and the nature of the issues raised thereby." Kimberly v. DeWitt, 1980 OK CIV APP 2, ¶ 6, 606 P.2d 612, 614. It is undisputed that Defendant Galyon intended to discharge his firearm aimed at Simms. Plaintiff is substantively pleading a cause of action for assault and battery. Oklahoma prescribes claims for assault and battery are subject to a one-year statute of limitations. See 12 Okla. Stat. §95(A)(4). The shooting occurred on July 11, 2013, and Plaintiff's lawsuit was not filed until March 13, 2015. Plaintiff has exceeded the statute of limitations for an assault and battery claim.

This Court finds that Plaintiff is substantively alleging an assault and battery claim and Plaintiff's claim exceeded the statutorily prescribed timeframe. This Court finds that Defendant Galyon is GRANTED summary judgment on this issue.

2. Qualified Immunity and Excessive Force

Plaintiff brings an excessive force claim under the Fourth Amendment against Defendant Galyon. That this action happened under the color of state law is a predicate

for Plaintiff's § 1983 excessive force claim. Defendant Galyon has conceded he was acting under the color of state law and so this analysis may proceed.* The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The hallmark of the Fourth Amendment is reasonableness." United States v. Harmon, 785 F.Supp.2d 1146, 1157 (D.N.M. 2011). The Supreme Court has held that in the law enforcement environment "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" Katz v. United States, 389 U.S. 347, 357 (1967) (footnotes omitted). When "the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 394 (1989). Excessive force violations are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Id. at 388. In Tennessee v. Garner, 471 U.S. 1 (1985), the Supreme Court stated "[t]o determine the constitutionality of a seizure '[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" Id. at 8 (quoting United States v. Place, 462 U.S. 696, 703 (1983)).

---

* Defendant Galyon does not dispute that he was acting under color of law at all times during his encounter with decedent Brian Simms, Jr. (Resp. to Pl.'s Mot. for Partial Summ. J., Dkt. No. 187, p. 8.)

5

> "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Graham, 490 U.S. at 396 (internal citation omitted). This reasonableness standard "must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." Id. The main inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397.

The Tenth Circuit has "recognized that the reasonableness inquiry in excessive force cases overlaps with the qualified immunity question." Medina v. Cram, 252 F.3d 1124, 1131 (10th Cir. 2001). "[T]his overlap renders a qualified immunity defense of less value when raised in defense of an excessive force claim." Id. In the course of their official duties, officers may be entitled to qualified immunity and it "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must satisfy a two-part burden: first, that the defendant's actions violated a constitutional or statutory right and, second, that that right was clearly established at the time of the defendant's unlawful conduct." Joseph v. Silver, No. 14-cv-126-JED-TLW, 2015 WL 6624589, at *1, *3 (N.D. Okla. Oct. 30, 2015). "'Where a disputed issue of material fact remains, that ends the matter for summary judgment,' and the court will not consider whether an officer's actions were objectively reasonable."

Silver, 2015 WL 6624589 at *3 (quoting Olsen v. Layton Hills Mall, 312 F.3d F.3d 1304, 1315 (10th Cir. 2002)). A claim of qualified immunity requires that the plaintiff must first satisfy the two-part burden and then the defendant bears the burden of showing there is a genuine issue of material fact and that that individual is entitled to judgment as a matter of law.

Under these circumstances, Defendant Galyon claims qualified immunity so the Court's analysis begins with whether Plaintiff satisfies the two-part burden: (1) whether Defendant Galyon violated Simms' Fourth Amendment protection against excessive force and (2) if that right was clearly established at the time of Defendant Galyon's conduct. Under the instant facts and circumstances, this Court concludes Defendant Galyon's actions were objectively reasonable when viewed from the perspective of a reasonable officer at the scene.

Officer Escobar and Defendant Galyon approached Simms' vehicle while "[h]e was sitting in the driver's side of the vehicle." (Dkt. No.134-78, p. 5.) As Defendant Galyon was about five or six feet from Simms, he "noticed a nine millimeter pistol stuck in [Simms'] waistband. [Galyon] could see the butt of it clearly in the front of [Simms'] pants." (Dkt. No. 163-2, p. 11.) Officer Escobar also noted a handgun in Simms' lap. (Dkt. No. 134-78, p. 5.) Defendant Galyon clearly assessed a threat to not only his safety but also to Officer Escobar's safety. Once Defendant Galyon made contact with Simms, Defendant Galyon noted Simms "immediately looks at me and without changing his facial expression or anything quickly takes his hand and puts it on the butt of the gun and starts to pull it out." (Dkt. No. 163-2, p. 13.) Officer Escobar also noticed that Simms "slowly

moved both of his hands towards his - - or towards the weapon. Prior to going towards the weapon or the direction of the weapon he made faster more sudden movement in the same direction towards the weapon." (Dkt. No. 134-78, p. 12.) Defendant Galyon also warned Simms not to pull the gun from his waistband, "I said, 'Don't do it, don't do it. Don't do it.' And before I could get the third 'don't do it' out, I felt like I was engaged in a gun battle. I didn't know if he had already cleared the gun. I didn't know if he had gotten a shot off." (Dkt. No. 163-2, pp. 13-14.) Officer Escobar also states that "'Sergeant Galyon . . . yells at the subject or suspect. I want to say it was three times don't do it.'" (Dkt. No. 134-78, p. 8.) Defendant Galyon further commented "I could still see [Simms] from the shoulder up, the elbow, the head, the body motion, all continuing with that same drawing motion that he had started when I had a full view prior to pulling my weapon." (Dkt. No. 163-2, p. 21.) Officer Galyon warned Simms to not continue to draw the gun and Simms ignored Officer Galyon and continued to be a threat to the officer's safety. Plaintiff argues that Officer Galyon's behavior was excessive and unreasonable and Simms' behavior was not threatening. (Pl.'s Resp., Dkt. No. 188, p. 16.) However, this is all that Plaintiff argues; Plaintiff does not allege any genuine issues of material fact regarding Defendant Galyon's and Officer Escobar's testimony.

Even if this Court were to entertain an argument that there is a material dispute of fact regarding Officer Galyon's and Officer Escobar's testimony about the events of the evening of July 11, 2013, and satisfy the first qualified immunity prong, Plaintiff would fail on the second qualified immunity prong because there was no "clearly established" right at the time of Defendant Galyon's conduct. See Pearson v. Callahan, 555 U.S. 223,

8

243-44 (2009). There is substantial case law approving the reasonably objective standard for officers defending themselves when faced with an individual brandishing a weapon. See Allen v. Muskogee, Okla., 119 F.3d 837, 840 (10th Cir. 1997) (holding that when confronted with an individual holding a gun "[t]he excessive force inquiry includes not only the officers' actions at the moment that the threat was presented, but also may include their actions in the moments leading up to the suspect's threat of force."); Sevier v. City of Lawrence, Kan., 60 F.3d 695, 699 (10th Cir. 1995) (holding the reasonableness of an officer's "actions depends both on whether the officers were in danger at the precise moment that they used force and on whether Defendants' own . . . conduct . . . created the need to use such force."). Simms posed a threat to Defendant Galyon and Officer Escobar when Simms drew his weapon, and, most importantly, as Simms continued drawing his weapon after Defendant Galyon warned Simms to stop. When Simms did not stop drawing the weapon, Defendant Galyon responded with objectively reasonable force under the circumstances.

As a result of this analysis, Defendant Galyon's Motion for Summary Judgment based on qualified immunity is GRANTED.

B. Plaintiff Redd's Motion for Summary Judgment

At the outset, this Court notes that the same lack of genuine issues of material fact that are present in Defendant Galyon's Motion for Summary Judgment are present in Plaintiff's Motion for Partial Summary Judgment pertaining to Plaintiff's Fourth Amendment excessive force claim. It is also unclear whether Plaintiff is arguing for an additional excessive force claim brought pursuant to the Fourteenth Amendment.

However, it is clear that "the Fourth Amendment, not the Fourteenth, governs excessive force claims arising from 'treatment of [an] arrestee detained *without* a warrant' and '*prior to* any probable cause hearing.'" Estate of Booker v. Gomez, 745 F.3d 405, 419 (10th Cir. 2014) (quoting Austin v. Hamilton, 945 F.2d 1155, 1160 (10th Cir. 1991)).

> "And when neither the Fourth nor Eighth Amendment applies—when the plaintiff finds himself in the criminal justice system somewhere between the two stools of an initial seizure and post-conviction punishment—we turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities."

Id. (quoting Porro v. Barnes, 624 F.3d 1322, 1326 (10th Cir. 2010)). The legal conclusions in this Memorandum Opinion are unaltered by any arguments that Plaintiff makes in her motion regarding excessive force and, as a result, this Court finds that Plaintiff's Motion for Summary Judgment is DENIED.

C.  Defendant OKC's Motion for Summary Judgment

This Court has found there is no genuine issue of material fact regarding Plaintiff's excessive force claim brought under the Fourth Amendment and Defendant Galyon is entitled to qualified immunity. Since there is no constitutional issue there is no need to further analyze this issue. Defendant OKC is entitled to summary judgment on Plaintiff's failure to train claim and failure to discipline claim.

D.  Defendant Citty's Motion for Summary Judgment

Plaintiff seeks to hold Defendant Bill Citty liable in his supervisory capacity for Defendant Galyon's actions. This Court has found that there is no genuine issue of material fact relating to the alleged Fourth Amendment excessive force violation. And as a result,

there is no additional analysis necessary regarding Plaintiff's supervisory claim because there is no constitutional violation at issue. Defendant Citty is entitled to summary judgment on the supervisory claim.

E. Oklahoma Governmental Tort Claims Act (GTCA) Claims

This Court has held that what Plaintiff characterizes as a gross negligence claim is, in fact, a claim for assault and which is time barred. As a result, there is no tortious conduct alleged under which any Defendant may be held responsible under the GTCA. Defendant OKC's Motion for Summary Judgment on Plaintiff's state law claim is GRANTED.

## CONCLUSION

Accordingly, the Motion for Summary Judgment of Defendant Paul Galyon (Dkt. No. 163) is GRANTED. Plaintiff's Motion for Partial Summary Judgment as to Defendant Galyon (Dkt. No. 164) is DENIED. Defendant City's Motion for Summary Judgment (Dkt. No. 134) is GRANTED. Defendant William Citty's Motion for Summary Judgment (Dkt. No. 135) is GRANTED. A separate judgment will enter.

IT IS SO ORDERED this 3rd day of May, 2018.

ROBIN J. CAUTHRON
United States District Judge